IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| REGIONS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:23-cv-00019 |
| | ) | |
| ROBERT M. FRAZIER, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is a breach-of-contract debt collection case; plaintiff Regions Bank ("Regions") filed its complaint in this court on April 4, 2023, against defendant Robert M. Frazier. (Compl., Dkt. No. 1.) Regions served Frazier by summons on April 11, 2023. (Dkt. No. 5.) Frazier has not answered Regions' complaint or otherwise participated in this case. Accordingly, upon Regions' motion (Dkt. No. 6), the clerk entered default against Frazier on May 11, 2023. (Dkt. No. 7.)

Regions has now moved for default judgment (Dkt. No. 8) and filed a supplemental brief as to attorneys' fees and costs (Dkt. No. 10). For the reasons set forth herein, the court will grant Regions' motion and award a total judgment of $161,939.72.

I. BACKGROUND[1]

Frazier, at all times relevant to this case, has been and is a citizen and resident of

---

[1] The clerk entered default against Frazier on May 11, 2023. Upon default, the plaintiff's factual allegations are accepted as true for all purposes except determining damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Accordingly, facts alleged in Regions' complaint are accepted as true for the purpose of this motion for default judgment. However, the court need not accept as true conclusions of law, *id.*, or allegations relating to the amount of damages, Fed. R. Civ. P. 8(b)(6).

Frederick County, Virginia. Regions Bank is an Alabama state-chartered bank that (along with its parent company, Regions Financial Corporation) maintains its principal place of business in Birmingham, Alabama. Effective March 31, 2023, Regions is the successor by merger to Ascentium Capital LLC ("Ascentium"). Through the merger, Regions acquired Ascentium's assets—including, but not limited to, Ascentium's rights, title, and interest in the loan at issue in this case. Prior to the merger, Ascentium was a Delaware limited liability company with its principal office in Kingwood, Texas.

On or about June 2022, Haulin' Trash, LLC ("Haulin' Trash") entered into an Equipment Finance Agreement, Agreement No. 2669755 (the "EFA"), with Ascentium to finance the purchase of certain equipment—"new steel containers." (EFA, Dkt. No. 1-2.) Pursuant to the EFA, Haulin' Trash originally agreed to make 60 monthly payments of $2,792.11, beginning in July 2022, until the debt was paid in full. The total amount of scheduled payments required by the EFA is $167,526.60. An Addendum to the EFA corrected and/or changed the amount of the monthly payments to $2,812.97.

Also on or about June 2022, Frazier executed the Guaranty section of the EFA, by which he unconditionally guaranteed payment and performance of all of Haulin' Trash's obligations under the EFA. Pursuant to the terms and conditions of the EFA, Haulin' Trash granted Ascentium a purchase money security interest in the financed equipment.

Haulin' Trash did not make the scheduled monthly payments under the EFA in or about December 2022, nor subsequent payments thereafter. Regions claims that, by failing to make the monthly payments due under the EFA, Haulin' Trash defaulted on its contractual obligations to

Ascentium (and now Regions), and a total balance of $146,383.52 is due and owing as of March 13, 2023. That amount, Regions alleges, includes past due payments, late charges, site inspection charges, and accelerated future payments (applying a 3% present value discount).

Due to Haulin' Trash's default on the monthly payment obligations, Ascentium accelerated the amounts due under the EFA and declared the entire outstanding balance due and payable. Regions alleges that Haulin' Trash failed or refused to perform under the EFA.[2] According to Regions, under the terms of the Guaranty section in the EFA, Frazier is obligated to pay Haulin' Trash's outstanding balance under the EFA and pay all of Regions' expenses in enforcing the EFA and the Guaranty. Ascentium demanded that Frazier perform Haulin' Trash's obligations under the EFA, but Frazier allegedly failed or refused to do so.

Regions alleges that, pursuant to the EFA, upon an event of default, Frazier is obligated to reimburse Regions for all costs incurred in enforcing its rights under the EFA, including attorneys' fees and costs of repossession, repair, storage, and remarketing of collateral. Regions further asserts that default interest is accruing under the EFA at the rate of $71.65 per day.

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the

---

[2] On March 2, 2023, Haulin' Trash filed a voluntary Chapter 7 petition with the United States Bankruptcy Court for the Eastern District of Virginia. In its complaint, Regions clarified that, in bringing this case against Frazier (the personal guarantor), Regions is not demanding payment from Haulin' Trash and is not attempting to collect the debt from Haulin' Trash.

clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . ." *Hummel v. Hall*, 868 F. Supp. 2d 543, 547 (W.D. Va. 2012) (quoting Fed. R. Civ. P. 55(b)(1)). "However, when, as here, the sum is not certain, default judgment can only be made by the court." *Id*. (citing Fed. R. Civ. P. 55(b)(2); *Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006)).

But before the court may award the default judgment, it must ensure that the plaintiff has properly alleged each cause of action. Entry of default does not itself establish liability. *See Ohio Cent. R.R. Co. v. Cent. Tr. Co*., 133 U.S. 83, 91 (1890). Rather, upon an entry of default, the court accepts the complaint's well-pleaded facts as true (for all purposes, excluding the determination of damages), and then determines whether the well-pleaded allegations and any evidence submitted support a default judgment on the alleged causes of action. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

"Although the clear policy of the Federal Rules of Civil Procedure is to encourage dispositions of claims on their merits, the entry of default judgment is committed to the discretion of the trial court." *Hummel*, 868 F. Supp. 2d at 548 (citing *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)). In reviewing motions for default judgment, courts have considered the following factors:

> (1) whether there is a large amount of money involved in the litigation; (2) whether there are material issues of fact in the case

> needing resolution; (3) whether the case involves issues of great public importance; (4) whether the grounds for the motion for a default judgment are highly technical; (5) whether the party asking for a default judgment has been prejudiced by the non-moving party's actions or omissions; (6) whether the actions or omissions giving rise to the motion for a default judgment are the result of a good-faith mistake on the part of the non-moving party; (7) whether the actions or omissions giving rise to the motion for a default judgment are the result of excusable neglect on the part of the non-moving party; and (8) whether the grounds offered for the entry of a default judgment are clearly established.

*Id*.

### III.  DISCUSSION

**A.  Regions' Complaint Supports Default Judgment Against Frazier**

First, Regions has sufficiently alleged Frazier's liability on the merits. The agreement at issue expressly states that it "shall be governed and construed under the laws of the State of California without reference to its principles of conflict of laws." (*See* EFA.) And in California, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). Based on the factual allegations made in the complaint, Regions has stated a claim for breach of the EFA.

Usually, a written contract can be pleaded by alleging its making and attaching a copy which is incorporated by reference. *Perry v. Robertson*, 201 Cal. App. 3d. 333, 341 (Cal. Dist. Ct. App. 1988). A written contract can also be pleaded by alleging the making and the substance of the relevant terms. *Id*. Here, Regions has done both. Regions attached a copy of the EFA

5

signed by both the debtor (Haulin' Trash) and the guarantor (Frazier) as an exhibit to its complaint and discussed substantial and relevant portions of that agreement within the complaint itself.  (*See* Compl. ¶¶ 10–14, 20, 23.)

The EFA provides that the debtor will be in default if the debtor "fail[s] to pay any amount under this EFA when due" and that, in the event of default, the lender may "declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by [the lender]."  (*See* EFA.)  The EFA further states that the debtor "shall reimburse [the lender] for all costs we incur in enforcing our rights including our attorneys' fees and costs of repossession, repair, storage and remarketing of the Collateral."  (*Id.*)

The complaint alleges that Haulin' Trash did not make the scheduled monthly payments in or about December 2022, nor subsequent payments thereafter, under the EFA.  (Compl. ¶ 15.)  Thus, because Haulin' Trash breached the contract by "fail[ing] to pay" an amount due under the EFA when due, Ascentium acted within its contractual rights in "declar[ing] all sums due and to become due hereunder immediately due and payable."  (*See* EFA.)  And because Frazier guaranteed to Ascentium "the payment and performance when due of all of the obligations of the Debtor under this EFA" and permitted it to "proceed against [him] before proceeding against the Debtor, the Collateral or enforce any other remedy," Ascentium (and now Regions) likewise acted within its contractual rights in bringing this action against Frazier following the alleged default.  (*Id.*)  In sum, Regions' complaint sufficiently alleges Frazier's liability on the merits.

Moreover, consideration of the above factors further demonstrates that default judgment is appropriate here.  "Although the amount of money involved in this litigation is not

inconsequential, it is certainly not so large as to be remarkable." *Hummel*, 868 F. Supp. 2d at 548. And this case is of little, if any, public importance, leading the court to find that adjudication on the merits is not a particularly significant factor here. Likewise, Regions asserts a straightforward breach-of-contract claim that is not highly technical. Regions properly served Frazier (s*ee* Dkt. No. 5), and Frazier has failed to file a responsive pleading under Rule 12 with the court, despite explicit instructions in the summons to do so (*see id.* 1). The court has no reason to believe that Frazier's subsequent default is the result of a good-faith mistake or excusable neglect on his behalf. The court is also satisfied that there are no material issues of fact after considering Regions' complaint, the exhibits attached thereto, and the affidavits attached to Regions' motion for default judgment.[3]

For these reasons, along with Frazier's liability on the merits, a default judgment in favor of Regions is appropriate.

**B. Damages**

"[I]f the court determines that liability is established, it must then determine the appropriate amount of damages." *Harrington v. Matchmaking*, No. 3:16-cv-00084, 2017 WL 1906954, at *1 (W.D. Va. May 8, 2017) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). "In so doing, the court may conduct an evidentiary hearing under Rule 55(b)(2)." *Id.* "The court may also make a determination of damages without a hearing as long as there is an adequate evidentiary basis in the record for the award." *Id.* (citing *Anderson*

---

[3] The court acknowledges the possibility that Frazier could have asserted affirmative defenses based on the facts of this case; however, "it is not the court's role to assert affirmative defenses on behalf of a defendant." *Loeschen v. Shrom*, No. 7:18-cv-00429, 2020 WL 4228311, at *3 n.3 (W.D. Va. July 23, 2020).

*v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998) (noting that "in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing")).

Here, Regions provided several documents indicating the extent of Frazier's debt: the EFA itself, vendor invoices (Dkt. No. 1-3), a UCC Financing Statement filed on June 3, 2022 (Dkt. No. 1-4), and a payment history (Dkt. No. 1-5). Additionally, Regions included an affidavit from Anthony Campisciano (its Vice President—Manager, Special Assets) attesting to his custodianship of those documents. Collectively, the attached documents demonstrate $8,438.91 in past due payments, $866.90 in late charges,[4] $230.00 in site inspection charges, and $136,847.71 in future accelerated payments (3% present value discount), for a total of $146,383.52 due and owing as of March 13, 2023. Adding default interest at the rate of $71.65 per day through the date of judgment (a total of 148 days), that number increases to a total of $156,987.72. Regions is entitled to damages in this amount.

**C. Attorneys' Fees**

Regions also filed a supplemental brief seeking attorneys' fees. (Dkt. No. 10.) As noted earlier, the EFA provides that the debtor would reimburse Regions for all costs incurred in enforcing its rights under the EFA, including its attorneys' fees. (*See* EFA.) California follows the "American rule," under which each party to a lawsuit must pay its own attorneys' fees unless a contract or statute or other law authorizes a fee award. Cal. Code Civ. P. §§ 1021,

---

[4] Under the EFA, any amount not paid when due is subject to a late charge of the lower of 10% of such amount or the highest amount allowed by law, and interest on all past due amounts under the EFA is the lower of 1.5% per month or the highest rate allowed by law. (*See* EFA.) The maximum legal rate of interest on a loan under California law is 12% per annum. Cal. Civ. Code § 1916-1.

1033.5(a)(10); *Musaelian v. Adams*, 45 Cal. 4th 512, 516 (2009). California Civil Code § 1717 governs attorney fees awards authorized by contract and incurred in litigating claims sounding in contract. *Frog Creek Partners, LLC v. Vance Brown, Inc.*, 206 Cal. App. 4th 515, 523 (2012); *Silverado Modjeska Recreation & Parks Dist. v. Cnty. of Orange*, 197 Cal. App. 4th 282, 310 (2011). Under § 1717, when a contract provides for an award of fees "incurred to enforce that contract," "the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees . . . ." Cal. Civ. Code § 1717(a).

In assessing the reasonableness of a fee request, the "first step involves the lodestar figure—a calculation based on the number of hours reasonably expended multiplied by the lawyer's hourly rate." *EnPalm, LLC v. Teitler*, 162 Cal. App. 4th 770, 774 (2008). Second, the court may adjust the lodestar figure "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id*. (internal quotations omitted). "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). Factors to be considered in adjusting the lodestar include "the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or failure, and other circumstances in the case." *EnPalm*, 162 Cal. App. 4th at 774 (emphasis omitted).

Here, Regions seeks $6,247.20 in attorneys' fees for work completed through May 30, 2023, and $402 in filing and service fees, for a total of $6,649.20 in attorneys' fees and costs. In

support of its request, Regions submitted an affidavit from its counsel of record, Chad Wallace, (Dkt. No. 8-1), as well as a redacted copy of invoices for this action from his law firm, Baker Donelson, which provide a detailed description of the work performed. (Dkt. No. 10-1).[5]

The court has reviewed the records submitted by Regions' counsel and concludes that the descriptions of work completed are neither unduly vague nor inappropriately duplicative. Regarding counsel's success or failure in the action, given the court's resolution of the motion for default judgment, counsel succeeded in securing for Regions the entirely of the relief it requested. However, with respect to the nature and difficulty of the litigation and the skill required to handle the matter, the court finds that counsel's hourly rate—approximately $438 per hour—is high in light of the relative simplicity of the underlying claim and actions taken in this case to date. A reasonable hourly rate is "that prevailing in the community for similar work." *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000). Courts in this district have only awarded attorneys' fees at hourly rates of $450 or more in the most complex commercial and civil rights cases. *See, e.g.*, *Sines v. Kessler*, No. 3:17-cv-00072, 2023 WL 2388050 (W.D. Va. Mar. 7, 2023) (recommending $3.18 million award to prevailing counsel—including partner billing rates between $400 and $450 per hour—following jury verdict finding 17 defendants liable for conduct relating to the August 2017 "Unite the Right" rally in Charlottesville, Virginia), *report and recommendation adopted*, No. 3:17-cv-00072, Dkt. No. 1660 (W.D. Va. Mar. 30, 2023). Accordingly, the court will order attorneys' fees at a reduced rate of $350 per hour. Based on

---

[5] The invoices are redacted to omit the law firm's banking information, as well as time expended on the bankruptcy matter regarding Haulin' Trash (the principal debtor under the EFA).

10

that hourly rate and the 13 hours of work disclosed in Regions' time entries,[6] plaintiff's counsel is entitled to $4,550 in attorney's fees, plus $402 in costs.

## IV.  CONCLUSION

For the reasons stated above, the court will grant Regions Bank's motion for default judgment (Dkt. No. 8) and award Regions a total of $156,987.72 in damages, plus $4,550 in attorneys' fees and $402 in costs—for a total judgment of $161,939.72.  A separate order will issue.

Entered: August 8, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[6] As noted earlier, counsel indicated that certain time entries were redacted to the extent they related only to the Haulin' Trash bankruptcy matter and not to this case.  In most such entries, counsel redacted the date, timekeeper, description, hours performed, and amount billed.  However, for one entry on the fourth page of counsel's itemized report, the description of the work performed is redacted, but the hours spent and amount billed (1 hour and $437.76, respectively) were not redacted. (Dkt. No. 10-1 at 4.)  Given that all other descriptive information in that entry was redacted (as with the Haulin' Trash time entries), the court will construe that entry as also relating to the Haulin' Trash matter and will not award attorneys' fees for that time.